**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRMINAL CASE NO. |
| | : | 3:00-CR-00263 (JCH) |
| v. | : | |
| | : | |
| JERMAINE BUCHANAN, | : | |
|     Defendant. | : | AUGUST 8, 2024 |

**RULING ON DEFENDANT'S MOTIONS FOR REDUCTION IN SENTENCE (DOC. NOS. 2661 & 2668)**

**I.   INTRODUCTION**

Jermaine Buchanan ("Mr. Buchanan") moves for compassionate release pursuant to section 3582(c)(1)(A) of title 18 of the United States Code. See Defendant's Pro Se Motion for Reduction in Sentence ("Def.'s Pro Se Mot.") (Doc. No. 2661); Defendant's Counseled Motion for Reduction in Sentence ("Def,'s Mot.") (Doc. No. 2668).  Mr. Buchanan seeks a reduction in his sentence for extraordinary and compelling reasons, which consist of serious medical issues, family circumstances, rehabilitation, and time served.  See Defendant's Memorandum in Support of Motion for Reduction of Sentence ("Def.'s Mem."), at 1-3 (Doc. No. 2669).  The government opposes the Motion.  See Government's Response to Defendant's Motions for Compassionate Release ("Gov't's Opp.") (Doc. No. 2677).

For the reasons stated below, the Motion is denied. Related motions to seal are granted on the ground that they apply to confidential medical records.  See Motion to Seal Medical Records (Doc. No. 2684), Motion to Seal Medical Letter (Doc. No. 2689).

1

**II.     BACKGROUND**

Mr. Buchanan was an enforcer in a violent drug trafficking group that operated in Connecticut from 1997 to 2001. Beginning in 1998, "the group's activities expanded to include violent acts" in order to grow its narcotic business. See United States v. Mr. Buchanan, 600 F.3d 204, 211-12 (2d Cir. 2010). In addition to trafficking kilograms of cocaine over the course of four years, the group's activities, under the leadership of Kelvin Burden, and the active involvement of Mr. Buchanan, resulted in one murder; one assault paralyzing the victim who, after 100 surgeries over the course of 20 years, including a double amputation, died in July 2021; two attempted murders; and other assaults. See Gov't's Opp. at 13; June 21, 2023 Letter from Justine L. Young to The Honorable Janet C. Hall ("Letter from Justine L. Young"), Gov't's Ex. A (Doc. No. 2677-1).

After an unsuccessful direct appeal of his guilty verdict, Mr. Buchanan and a co-defendant, Kelvin Burden, filed a Petition for a Writ of Habeas in civil action number 3:13-CV-477 (JCH) concerning nondisclosure by the government of some favorable treatment of a cooperating co-defendant, who had recanted in an Affidavit filed in connection with the habeas petitions. See Memorandum in Support of Motion to Vacate, 3:13-CV-477 (JCH) (Doc. No. 1). After extensive litigation and, as a trial was upcoming, the government, Mr. Buchanan, and Mr. Burden entered into a Stipulation for Re-Sentencing by which the parties would agree to entry of a judgment for petitioners on their Habeas Corpus Petitions, and an 11(c)(1)(C) Plea Agreement, pursuant to which Mr. Buchanan would plead guilty to Counts 1, 2, 3, 5, and 12, if the court entered a sentence of 262 to 365 months. See Stipulation for Re-Sentencing, 3:13-CV-477

(JCH) (Doc. No. 51).  The maximum for these counts, post habeas, was life, the Guideline calculation was 43/VI, and the Guideline range was life imprisonment.  See id. at 5.  Mr. Buchanan was then resentenced to a term of imprisonment of 365 months, with credit for time served from July 12, 2004.  See Amended Judgment (Doc. No. 2559).  After that judgment entered,[1] Mr. Buchanan filed a Motion under the First Step Act seeking immediate release or resentencing.  See Motion to Reduce Sentence – First Step Act (Doc. No. 2588); Counseled Motion for Reduction of Sentence Under the First Step Act of 2018 (Doc. No. 2612).  After further briefing, this court denied Mr. Buchanan's First Step Act Motion on the record at a hearing held on November 18, 2020.  See Transcript (Doc. No. 2625).

Mr. Buchanan then moved for reconsideration of the court's Ruling.  See Defendant's Pro Se Motion for Reconsideration (Doc. No. 2623); Defendant's Counseled Motion for Reconsideration (Doc. No. 2626).  The court issued a Ruling on April 1, 2021, granting Mr. Buchanan's Motions for Reconsideration but adhering to its decision denying his Motions for Compassionate Release.  See Ruling on Defendant's Motion for Reconsideration (Doc. No. 2629).

On June 5, 2023, Mr. Buchanan filed a second, pro se Motion for Compassionate Release.  See Def.'s Pro Se Mot.  The court then appointed counsel to represent Mr. Buchanan and file a counseled Motion on his behalf.  See Order (Doc. No. 2664); Def.'s Mot.  The government filed its Opposition Memorandum on October 13, 2023.  See

---

[1] Mr. Buchanan appealed that sentence, see Notice of Appeal (Doc. No. 2350), which was granted in part as to the term of supervised release, see Mandate of USCA (Doc. No. 2480).  The court then resentenced Mr. Buchanan to a sentence consistent with that Mandate.  See Third Amended Judgment (Doc. No. 2504).

Gov't's Opp. On October 17, 2023, the defendant filed his Reply. See Defendant's Reply to Government's Response (Doc. No. 2678). Since the Motion was joined, the court has held multiple telephonic status conferences regarding Mr. Buchanan's medical issues. Moreover, in response to various court orders, the parties have proffered additional filings regarding Mr. Buchanan's medical condition and treatment.

### III. LEGAL STANDARD

Under section 3582(c)(1)(A) of title 18 of the United States Code, as modified by the First Step Act of 2018, an incarcerated defendant may move for compassionate release. See 18 U.S.C. § 3582(c)(1)(A). Pursuant to section 3582(c)(1)(A)(i), a court may not modify a term of imprisonment "once it has been imposed" except in a case where, after exhaustion of administrative remedies, the court considers the applicable section 3553(a) factors and finds that "extraordinary and compelling reasons warrant such a reduction." Id. § 3582(c)(1)(A)(i).

Effective November 1, 2023, section 1B1.13 of the Sentencing Guidelines now applies to motions for "compassionate release" filed by individual defendants under section 3582, see Guidelines Manual § 1B1.13 (2023). Section 1B1.13 now includes, inter alia, an expanded list of specified extraordinary and compelling reasons, see id. The court has considered the Guideline amendments in this Ruling.

### IV. DISCUSSION

A court may reduce a previously imposed term of imprisonment where an incarcerated individual (1) has exhausted his or her administrative remedies; (2) has shown extraordinary and compelling circumstances justifying the reduction; and (3) has demonstrated that the relevant factors, enumerated under section 3553(a) of title 18 of

the United States Code, also warrant reduction.  See United States v. Keitt, 21 F.4th 67, 71 (2d Cir. 2021).  The court addresses these requirements in turn.

    A.  Exhaustion of Administrative Remedies

An inmate may move for a sentence reduction only "after the [inmate] has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ("BOP") to bring a motion on the [inmate]'s behalf or the lapse of 30 days from the receipt of such a request by the warden of the [inmate]'s facility, whichever is earlier[.]"  18 U.S.C. § 3582(c)(1)(A).  Mr. Buchanan has demonstrated, in his counseled Motion, that he has exhausted his administrative remedies.  See Def's Mem. at 7; July 13, 2023 Letter from Kara E. Moreau to Warden J.L. Jamison, Def.'s Ex. C, at 2-3 (Doc. No. 2669-2).  Thus, Mr. Buchanan may move for compassionate release pursuant to section 3582(c)(1)(A).

    B.  Extraordinary and Compelling Circumstances

Mr. Buchanan argues that his medical condition, his family circumstances, and his rehabilitation while incarcerated all present extraordinary and compelling reasons for a reduction in his sentence.  See Def.'s Mem.  Mr. Buchanan moved for compassionate release largely on the grounds that he urgently needed cataract surgery, which, until June of this year, the BOP had failed to provide.  See Def.'s Mem. at 8-15.  In June, however, Mr. Buchanan received the surgery and has regained some vision in his right eye.  See Government's Additional Status Update (Doc. No. 2719).  Counsel reports that Mr. Buchanan still requires non-emergency surgery on his left eye.  See Reply to Government's Status Report (Doc. No. 2721).

The United States Sentencing Guidelines Manual provides that a defendant's medical circumstances may constitute an extraordinary and compelling circumstance

5

warranting compassionate release where the defendant is "suffering from a serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care" in prison and from which he is "not expected to recover." See Guidelines Manual § 1B1.13(b)(1); accord id. § 1B1.13(b)(5) (providing that any "circumstances . . . similar in gravity" to the enumerated list of circumstances—including a defendant's medical condition—can constitute extraordinary and compelling circumstances). In the past year, the defendant and the government have compiled an extensive record regarding the BOP's pace of treatment of Mr. Buchanan's eye condition. It is clear from the record that Mr. Buchanan's vision had greatly deteriorated to the point that he was, at one point, legally blind. See Def.'s Ex. A ("Medical Records") (Doc. No. 2671). Indeed, the government acknowledged in its Opposition Memorandum that, at that time, "[t]here [was] no dispute that Mr. Buchanan's deterioration in vision has impacted his life or that he is in need of cataracts surgery to address that deterioration." See Gov't's Opp. at 11-12.

Despite this significant deterioration, BOP repeatedly failed to schedule Mr. Buchanan for cataract surgery. According to Mr. Buchanan's medical records, he was diagnosed with "cataract nuclear sclerosis" in April of 2018. See Medical Records at 8. In his Motion, Mr. Buchanan claims he was scheduled for surgery in 2020, but the surgery never took place, and he was not provided an explanation. See Def.'s Ex. D ("Buchanan Letter") (Doc. No. 2669-3). Mr. Buchanan's medical records indicate that, after a visit to his eye doctor in February 2022, Mr. Buchanan was again supposed to be scheduled for surgery, but BOP moved Mr. Buchanan to a different facility in another

6

state.  See Medical Records at 48-50.  After the transfer, approximately eight months elapsed before Mr. Buchanan was able to see an ophthalmologist.[2]  See id. at 17-18.

On October 31, 2023, Kevin Vincenzes, the Assistant Health Services Administrator at FCI Otisville, informed the government that Mr. Buchanan was "scheduled for a pre-operation appointment on December 6, 2023 to address his cataracts."  See Government's Supplemental Response (Doc. No. 2681).  At the December 6 appointment, Dr. Luke Simon, an ophthalmologist, concluded that, "because Mr. Buchanan's psoriatic arthritis[3] is not properly controlled, the [cataract] surgery cannot take place until he is seen by a rheumatologist and begins a treatment regimen for his psoriatic arthritis" and associated uveitis.[4]  See Defendant's Supplemental Memorandum ("Def.'s Suppl."), at 2 (Doc. No. 2683). The government reported at a February 23, 2024 status conference that Mr. Buchanan had a reaction to

---

[2] Shortly thereafter, Mr. Buchanan wrote to medical staff with concerns about his eye drop prescription, asserting that the eye drops "have not helped [his vision]", but rather, "made the right side of [his] face swell up" and gave him migraines and nausea.  See Correspondence from Jermaine Buchanan to BOP Staff, Def.'s Ex. A, at 1 (Doc. No. 2680).  It took three-days for Mr. Buchanan to be taken back to the ophthalmologist after voicing these complaints.  See id. at 2.

[3] Mr. Buchanan has suffered from psoriatic arthritis in BOP custody since at least 2013.  See Letter from Dr. Alice Shen ("Shen Letter"), Def.'s Ex. A, at 2 (Doc. No. 2690).

[4] Dr. Simon recommended that "Mr. Buchanan see the rheumatologist within 2-4 weeks of the December 6th appointment."  See Defendant's Supplemental Memorandum at 2 (Doc. No. 2683).  In addition, Dr. Simon "requested that Mr. Buchanan receive bloodwork, which he should then bring to a follow-up appointment in 'roughly two weeks.'"  Id.  It does not appear, however, that BOP adhered to these recommendations.[4]  See id.  Indeed, despite Dr. Simon's recommendation, Mr. Buchanan did not receive bloodwork until January 18, 2024, and the corresponding lab work on this blood draw was further delayed due to a delay in FedEx's shipment of these samples.  See Government's Status Update, at 1 (Doc. No. 2701).  Dr. Simon also reported that "Mr. Buchanan needs intensive co-management between a rheumatologist and an ophthalmologist . . . to give Mr. Buchanan a chance to regain his [vision]", and he sent an extensive email to BOP officials informing them of the care regimen that Mr. Buchanan requires.  Id. at 2-3.  Unfortunately, Dr. Simon's email went unanswered.  See id. at 2; Email from Dr. Luke Simon to BOP Officials, Def.'s Ex. B (Doc. No. 2685-2).

7

Humira, a drug for psoriatic arthritis, further delaying his cataract surgery.[5]  See Minute Entry (Doc. No. 2703); Government's Status Update (Doc. No. 2705).  Mr. Buchanan was finally able to receive the surgery in June of 2024.  See Government's Additional Status Update (Doc. No. 2719).

The court recognizes that not all these delays and complications were caused by BOP.  The court also acknowledges that BOP officials are working hard under difficult circumstances, with limited funding and personnel.  Additionally, the court recognizes that the parties dispute whether Mr. Buchanan has been fully compliant with treatment and committed to seeking surgery.  See Gov't's Opp. at 12.  Nonetheless, the record is deeply troubling to the court and raises serious questions about whether Mr. Buchanan has received adequate medical care while in BOP custody.  Ultimately, however, because Mr. Buchanan received his surgery, the court finds that this basis can no longer support a finding of extraordinary or compelling reasons for a reduction of sentence. See Guidelines Manual § 1B1.13 (2023) (giving, as an example, a medical condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover (emphasis added).") Counsel reports that Mr. Buchanan "has regained some vision in his right eye" and appears to be recovering well. See Status Report (Doc. No. 2723). So in the court's view, his medical condition at this time no longer rises to the level of extraordinary and compelling circumstances for release.

---

[5] Mr. Buchanan's treatment was further delayed by BOP failing to take him to a March 20 follow-up appointment, which the government explains was due to a "mishap regarding the paperwork." See Government's Response (Doc. No. 2711).

However, the court is mindful of the fact that Mr. Buchanan requires surgery in his other eye, on a non-emergency basis.  See Minute Entry (Doc. No. 2724).  Barring any medical complications or any refusal on Mr. Buchanan's part, the court expects Mr. Buchanan's second surgery to proceed in a reasonable time frame and before his condition deteriorates to an urgent state.

Mr. Buchanan also argues that his family circumstances – namely his mother's care needs – provide extraordinary and compelling reasons for a sentencing reduction.  Def.'s Mem. at 15-17.  Mr. Buchanan's family can only afford care for his mother, Daisy Lee, during the day, and she is left alone at night.  Ms. Lee's eldest daughter resides in Atlanta, GA, while her second daughter, who lives in Connecticut, underwent a kidney transplant last year and has her own medical challenges.  See Exhibit I, Daisy M. Lee Letter (Doc. No. 2669-I).  As a result, they are only able to provide limited caregiving support.

US Sentencing Guidelines provide that "the incapacitation of the defendant's parent" can amount to extraordinary and compelling circumstances "when the defendant would be the only available caregiver for the parent."  See Guidelines Manual § 1B1.13(b)(3)(C) (2023).  While the court is sympathetic to Ms. Lee's situation, the record before it does not support the conclusion that Mr. Buchanan is the only available caregiver for Ms. Lee when she has other family members who have been able to hire health aides.  While the court is sympathetic to Ms. Lee's needs, they do not provide extraordinary and compelling reasons for Mr. Buchanan's compassionate release.

Finally, the court turns to the issue of Mr. Buchanan's rehabilitation. The court credits the significant steps Mr. Buchanan has taken while incarcerated, including his

efforts at mentoring other inmates. However, the Second Circuit has made clear that "the only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason." United States v. Brooker, 976 F.3d 228 (2d Cir. 2020) (quoting 28 U.S.C. § 994(t)). Having found that Mr. Buchanan's medical and family circumstances do not amount to extraordinary and compelling circumstances, the court therefore cannot find extraordinary reasons on the basis of rehabilitation alone.

Because the court finds that Mr. Buchanan's medical condition and family circumstances do not rise to the level of extraordinary and compelling reasons, and because rehabilitation cannot alone be considered an extraordinary reason, Mr. Buchanan lacks the necessary basis for a sentencing reduction.

C. Section 3553(a) Factors

Even if the court were to find extraordinary and compelling circumstances, it still is faced with consideration of the 3553(a) factors, which this court has addressed regarding Mr. Buchanan on a number of occasions as recounted in the government's memorandum. The nature and circumstances of his offenses, his history and characteristics in the community have not changed. The court's concern about protecting the public and more importantly imposing a sentence that reflects the seriousness of the offenses, all still lead this court to conclude that consideration of the 3553(a) factors call for denial of this second Motion for Compassionate Release.

The court notes, in closing, that this case is not one where a defendant, if sentenced now, would face a lower maximum sentence and lower Guidelines due to changes in the law. This consideration is not determinative here, but the court is

mindful of it. Mr. Buchanan was convicted by a jury, and later by a guilty plea pursuant to a Plea Agreement, on two counts that had life as the maximum penalty and a Guidelines range of life. Today, Mr. Buchanan's maximum penalty and Guidelines range would still be life in prison. As a result of his Stipulation in his Habeas Corpus case, he received a 30-year sentence, which he is now serving. While the court judged that 11(c)(1)(C) Plea Agreement as presenting a very close question, the court concluded the 30-year sentence was appropriate under the circumstances. The court would not have accepted a lower sentence. Now, eight years later and mindful of all the circumstances Mr. Buchanan put forward in support of his request for compassionate release, and of the many cases in which murderers have received compassionate release from a life sentence, the court continues to view compassionate release to a sentence lower than 30 years as not appropriate in light of the 3553(a) factors.

**V.      CONCLUSION**

For the reasons stated above, Mr. Buchanan's Motion for a Reduction in Sentence (Doc. No. 2668) is denied, and his Pro Se Motion (Doc. No. 2661) is terminated as moot. Related motions to seal are granted. See Motion to Seal Medical Records (Doc. No. 2684), Motion to Seal Medical Letter (Doc. No. 2689).

The court would also like to commend both counsel for their professionalism and diligence throughout this process. For the past few months, counsel for Mr. Buchanan has been dogged in compiling a record for this court and in advocating for her client's health. She has consistently provided comprehensive, helpful updates on Mr. Buchanan's medical condition and his treatment. The court has also greatly

appreciated the government's counsel's forthrightness and responsiveness.  The court thanks both attorneys for their excellent representation.

**SO ORDERED.**

Dated at New Haven, Connecticut this 8th day of August 2024.

                                           /s/ Janet C. Hall
                                      Janet C. Hall
                                      United States District Judge